1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RADIOLOGICAL IMAGING
TECHNOLOGY, INC.,

        Plaintiff,

    v.

MED-TEC, INC. and NORTHWEST
MEDICAL PHYSICS, INC.,

        Defendants.

_____/

No. C 04-5118 MHP

**MEMORANDUM AND ORDER**
**Re: Defendants' Motion to Dismiss or**
**Transfer Venue**

On December 3, 2004, plaintiff Radiological Imaging Technology, Inc. filed the instant patent

infringement action in this court, alleging that a software program manufactured and sold by Med-Tec, Inc.

and Northwest Medical Physics, Inc. (collectively "defendants") infringes its exclusive rights in United

States Patent Number 6,675,116 ("the '116 Patent").   Now before the court is defendants' motion to

dismiss this action for lack of personal jurisdiction, or in the alternative, to transfer proceedings to the

United States District Court for the Northern District of Iowa pursuant to 28 U.S.C. § 1404(a).  Having

considered the parties' submissions and arguments, the court enters the following memorandum and order.

BACKGROUND

      The instant action arises from the claim that defendants' "ProCheck" software program infringes

plaintiff Radiological Imaging Technology's ("RIT's") exclusive rights in the '116 Patent, which claims a

method and device for the calibration of "radiotherapy dosimetry systems" used in the treatment of cancer.

Because the instant motion is directed solely at issues of personal jurisdiction and venue, the following

summary of the background to the parties' dispute focuses on the relevant jurisdictional facts and procedural history.

I.      Jurisdictional Facts

Plaintiff RIT is a Colorado corporation that designs and manufactures radiotherapy dosimetry equipment.  Ritt Decl. ¶¶ 2-3.  Plaintiff's sole office is located in Colorado Springs, Colorado.  Id. ¶ 2.  As the assignee of the '116 Patent, plaintiff presumptively holds the exclusive rights to make, uses, offer to sell, or sell the patented method and device for calibrating radiotherapy systems claimed therein.  Id. ¶¶ 3-4.  Plaintiff also sells a product known as the "RIT 113," which embodies the claimed invention.  Id.  According to Daniel Ritt, RIT's president and chief engineer, the state of California is an "important and substantial market" for the company, with a total seventy-nine "RIT 113" customers located here.  Id. ¶ 5.

Defendant Med-Tec Corporation is an Iowa Corporation headquartered in Orange City, Iowa.  Van Gorp Decl. ¶ 2.  In addition, Med-Tec has offices located in Lynnwood, Washington, Shanghai, China, and Lyon, France.  See Rogers Decl., Exh. A (hereinafter "Van Gorp Dep.") at 10-11.  Med-Tec provides software and other services for the radiation oncology community in the United States and approximately ninety other countries.  Id. at 17.  Med-Tec's 2004 sales revenue in California totaled roughly $3.9 million, or approximately ten percent of the corporation's total annual revenue.  Id. at 21-22.  In addition, although it maintains no permanent office in this state, Med-Tec employs an Oregon-based sales representative whose territory includes Northern California and an Arizona-based salesperson whose territory includes Southern California.  Id. at 84-85.

Defendant Northwest Medical Physics ("Northwest"), also an Iowa Corporation, is a wholly owned subsidiary of Med-Tec with its sole office located in Lynnwood, Washington.  Van Gorp Decl. ¶ 3; id. at 12-13.  Software engineers at Northwest have developed a computer program, sold under the trade name "ProCheck," for the purpose of performing quality assurance for intensity modulated radiation therapy ("IMRT"), a type of cancer treatment.  Van Gorp Dep. at 23-24.  The ProCheck software is now accused of infringing upon the claims of the '116 Patent.

Med-Tec sells and markets the accused product on behalf of its Northwest subsidiary.  Id. at 25.  In 2003, it sold one copy of the program to Redwood Regional Medical Center ("Redwood"), a hospital

UNITED STATES DISTRICT COURT
For the Northern District of California

located in Santa Rosa, California.  Id. at 39-40.  Redwood also receives ongoing technical support for ProCheck users at its Santa Rosa facility, which is provided by Northwest employees located in that company's Lynnwood, Washington office.  Id. at 27, 57-58.  In addition, Med-Tec has shipped a number of upgraded versions of the ProCheck software to Redwood since the initial sale occurred.  Id. at 53-58, 63-70.  Aside from the sale to Redwood, there is no evidence that additional copies of the accused product have been sold or distributed in California, although Med-Tec's Northern California sales representative has made at least six visits to prospective clients in this state for the purpose of demonstrating the ProCheck software.  Id. at 85-88, 92-95, 100-01.

II.     Procedural History

On December 3, 2004, plaintiff filed the instant action in this court, asserting a single count of patent infringement against both defendants. On February 18, 2005, defendants moved to dismiss plaintiff's complaint for lack of personal jurisdiction.  In the alternative, defendants urge the court to transfer venue to the United States District Court for the Northern District of Iowa.  Pursuant to the stipulation of the parties, the court deferred adjudication of that motion to permit limited discovery on matters relevant to the issues of jurisdiction and venue.  That discovery has since been completed, and defendants' motion is now ripe for adjudication.

LEGAL STANDARD

I.     Motion to Dismiss for Lack of Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss the complaint on the ground that the court lacks jurisdiction over his or her person or property.  Fed. R. Civ. P. 12(b)(2).  As in any other civil case, a district court may entertain a Rule 12(b)(2) motion in a patent infringement action, although Federal Circuit law governs the inquiry to the extent that it involves any "substantive" issues that affect the application of patent law.  See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564-65 (Fed. Cir.), cert. dismissed, 512 U.S. 1273 (1994).  Such substantive issues have been held to include the inquiry into whether a court's exercise of jurisdiction over a defendant comports with the Due Process Clause of the Fifth Amendment.  Id.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1     Where a plaintiff seeks to obtain personal jurisdiction over an out-of-state defendant, the district

2   court first must look to the long-arm statute of the state in which it sits.  Trintec Indus., Inc. v. Pedre

3   Promotional Prods., Inc., 395 F.3d 1275, 1279 (Fed. Cir. 2005) (citations omitted).  If jurisdiction exists

4   under that statute, the court then considers whether its exercise would be consistent with the limitations of

5   the due process clause.  Id.  (citation omitted).  Under California's long-arm statute, these two inquiries are

6   identical, and thus the court need only undertake the second, due process analysis in considering whether

7   the exercise of personal jurisdiction is proper.  See Cal. Civ. Proc. Code § 410.10; Inamed Corp. v.

8   Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

9   II.     Motion to Transfer Venue

10     A motion to transfer venue to another federal district court may be brought under 28 U.S.C. §

11   1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district

12   court may transfer any civil action to any other district or division where it might have been brought."  28

13   U.S.C. § 1404(a).  In patent infringement actions, the law of the regional circuit in which the district court

14   sits governs the adjudication of motions to transfer.  See Storage Tech. Corp. v. Cisco Sys., Inc., 329 F.3d

15   823, 836 (Fed. Cir. 2003).

16     The first step of the inquiry under section 1404(a) requires the court to determine whether

17   venue would be appropriate in the transferee district.  28 U.S.C. § 1404(a); see also Goodyear Tire &

18   Rubber Co. v. McDonnell Douglas Corp., 820 F. Supp. 503, 506 (C.D. Cal. 1992).  If so, the court must

19   then consider whether the criteria set forth in section 1404(a) favor adjudicating the plaintiff's claims in that

20   forum.  See Goodyear, 820 F. Supp. at 506.  The Ninth Circuit has characterized these criteria as

21   embodying an "individualized, case-by-case consideration of convenience and fairness."  Jones v. GNC

22   Franchising, Inc., 211 F.3d 495, 498 (9th Cir.) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22,

23   29 (1988)), cert. denied, 531 U.S. 928 (2000).  Among the factors that a district court may consider in

24   deciding whether transfer is appropriate are: (1) the location where the relevant agreements were

25   negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice

26   of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause

27   of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the

28

4

availability of compulsory process to compel attendance of unwilling nonparty witnesses; (8) the ease of access to sources of proof; and (9) any relevant public policy of the forum state.  Id. at 498-99 (citing Stewart, 487 U.S. at 29-31 and Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987)).

DISCUSSION

I.      Motion to Dismiss

The court first addresses defendants' motion to dismiss for lack of personal matter jurisdiction, applying California's long-arm statute (and hence the limitations of the due process clause) and Federal Circuit law.  See Cal. Civ. Pro. Code § 410.10; Beverly Hills Fan, 21 F.3d at 1564-65.  In considering these due process limitations, the Federal Circuit recognizes two kinds of personal jurisdiction: specific and general.  LSI Indus. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000).  Specific jurisdiction "arises out of or relates to the cause of action" and may be properly exercised even if those contacts are "isolated and sporadic."  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985)) (internal quotation marks omitted).  In contrast, general jurisdiction may arise "when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts."  Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984)).

With respect to the former, the court's inquiry is guided by the familiar "minimum contacts" analysis. See 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1378 (Fed. Cir. 1998).  In Akro Corp. v. Luker, 45 F.3d 1541 (Fed. Cir. 1995)), cert. denied, 515 U.S. 1122 (1995), and cert. denied, 526 U.S. 1113 (1999), the Federal Circuit distilled this analysis into a three-prong test, which requires the court to consider "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair."  Id. at 1545-46; see also 3D Sys., 160 F.3d at 1378.  A patentee's failure to satisfy any of these three elements will preclude the exercise the exercise of personal jurisdiction over an accused infringer.  See 3D Sys., 160 F.3d at 1378.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Nevertheless, in the context of a patent infringement action, the quantum of contacts required to

2   satisfy this test is in fact rather minimal.  The Federal Circuit has held that "the 'tort' of patent infringement

3   occurs where the offending act is committed and not were the injury is felt."  North Am. Philips Corp. v.

4   American Vending Sales, Inc., 35 F.3d 1576, 1579 (Fed. Cir. 1994) (citing 35 U.S.C. § 271(a)).

5   Consequently, because the sale of any infringing article in a state amounts to committing a tort within its

6   boundaries, a number of courts have held that even a single sale of the accused device is sufficient to

7   establish minimum contacts with the state in which that sale occurred.  See, e.g., IP Innovation, L.L.C. v.

8   RealNetworks, Inc., 310 F. Supp. 2d 1209, 1213 (W.D. Wash. 2004); Maxwell Chase Techs., L.L.C. v.

9   KMB Produce, Inc., 79 F. Supp. 2d 1364, 1372-73 (N.D. Ga. 1999); Osteotech, Inc. v. GenSci

10  Regeneration Scis., Inc., 6 F. Supp. 2d 349, 354 (D.N.J. 1998) see also Red Wing Shoe Co., Inc. v.

11  Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1359 (Fed. Cir. 1998) (citation omitted) (observing that

12  "even a single contact with a forum state may suffice for personal jurisdiction if it is directly and substantially

13  related to the plaintiff's claim").  For purposes of the instant motion, the court need not go so far as to hold

14  that a single sale of an allegedly infringing product will always be sufficient to establish personal jurisdiction

15  over a defendant accused of patent infringement.  Rather, here it is sufficient to note that defendants not

16  only sold at least one copy of the accused ProCheck software to a customer located in this state, but also

17  maintained an ongoing service relationship with that customer over a period of several years.  See generally

18  Van Gorp Dep. 39-70.  This type of activity was both purposefully directed at California residents and

19  directly related to the allegations that defendants have infringed the patent in suit.  Furthermore, Med-Tec

20  employs two sales representative whose territories include parts of California, at least one of whom has

21  provided potential customers with demonstrations of the accused product on a number of occasions.  Id. at

22  84-88, 92-95, 100-01.  Because such promotional activities could at least arguably be considered an

23  "offer to sell" the accused product within the meaning of Patent Act, see 35 U.S.C. § 271(a), it also

24  amounts to purposeful contact with the forum state that is directly related to the alleged infringement of the

25  patent in suit.  Accord 3D Sys., 160 F.3d at 1379 (holding that price quotation letters sent by an out-of-

26  state defendant may support specific jurisdiction in a patent infringement action).  Thus, the first two prongs

27  of the Federal Circuit's minimum contacts test are easily satisfied here.

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1    That leaves the court to consider the final prong of that test: namely, "whether assertion of personal

2    jurisdiction is reasonable and fair." Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1202 (Fed.

3    Cir. 2003) (citation omitted).  The burden of showing unreasonableness or unfairness falls upon the

4    defendant. Inamed Corp., 249 F.3d at 1363 (citing Akro, 45 F.3d at 1545-56).  To defeat jurisdiction, it

5    "must present a compelling case that the presence of some other considerations would render jurisdiction

6    unreasonable." Akro, 45 F.3d at 1546 (quoting Burger King, 471 U.S. at 476-77).  This inquiry may touch

7    upon a number of factors, including: (1) the burden on the defendant; (2) the interests of the forum state; (3)

8    the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most

9    efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental

10   substantive social policies. Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1352 (Fed. Cir. 2003)

11   (citing Inamed, 249 F.3d at 1363), cert. denied, 540 U.S. 1111 (2004).  As noted above, the defendants

12   in the instant action have marketed and sold the allegedly infringing device in California.  While defendants

13   characterize those contacts as "very limited," Defs.' Mem. P. & A. at 7, they fail to cite any "compelling"

14   reasons that would overcome the presumption in favor of jurisdiction that arises from their activities in this

15   state.  Simply put, requiring defendants to litigate this action in California is no more or less reasonable than

16   demanding that they do so in the numerous other states in which they sell the accused product.  Thus, the

17   third "fairness" prong of the Federal Circuit's test for specific jurisdiction is also satisfied here.

18   Having already concluded that the other requirements for establishing specific jurisdiction are met,

19   the court holds that it has jurisdiction over defendants with respect to the patent infringement claim asserted

20   in the case at bar.  The court therefore denies defendants' motion to dismiss for lack of personal

21   jurisdiction.[1]

22   II.   Motion to Transfer Venue

23   The court's conclusion that it may exercise jurisdiction over defendants compels it to consider their

24   alternative argument, in which they urge the court to transfer venue pursuant to 28 U.S.C. § 1404(a).

25   Specifically, defendants seek to transfer these proceedings to the Northern District of Iowa, where both

26   defendants are incorporated and Med-Tec maintains its corporate headquarters.  There is no dispute that

27   the Northern District of Iowa is an appropriate venue for this action.  See 28 U.S.C. § 1391(c) (defining a

28

7

corporate defendant's residence for venue purposes as "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced").   Thus, the sole question is whether "the convenience of the parties and witness" and "the interest of justice" favor litigating this action in Iowa rather than in California.  See id. § 1404(a).

Of course, a court must ordinarily give "great weight" to a plaintiff's choice of forum in adjudicating a motion to transfer venue.  Lou, 834 F.2d at 739; see also HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999).  However, where the plaintiff seeks to litigate its claims in a forum outside its home state and district, deference to that choice, although not dismissed altogether, is attenuated.  Home Indem. Co. v. Stimson Lumber Co., 229 F. Supp. 2d 1075, 1085 (D. Or. 2001); cf. Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 101 (2d Cir. 2000) ("While any plaintiff's selection of a forum is entitled to deference, that deference increases as the plaintiff's ties to the forum increase."), cert. denied, 532 U.S. 941 (2001).  That is the situation in which plaintiff finds itself here.  As a Colorado corporation with its sole office in that state, the extent of plaintiff's contacts with California and with this district is limited.  Plaintiff maintains no permanent presence in this state, and while it asserts that  California is an "important" market for its products, the fact remains that plaintiff sells its products "worldwide."  Ritt Decl. ¶ 5.  Thus, the court solicitude toward plaintiff's choice of forum is correspondingly limited.

Nor is there any suggestion that defendants' contacts with this district are particularly extensive.  Like plaintiff, defendants consider California an important market for their products, Van Gorp Dep. at 15, 99, and as the preceding discussion shows, there is no dispute that they transact business in this state and are thus subject to the jurisdiction of this court.  But again, neither defendant maintains an office in California or even employs a California-based sales representative. Van Gorp Decl. ¶¶ 2-5.  The court therefore finds that neither party has contacts with this district that favor litigating plaintiff's patent infringement claim here.

On the other hand, defendants have sustained and significant connections to the Northern District of Iowa.  Both defendants are Iowa corporations, and Med-Tec, the parent corporation of its co-defendant subsidiary, maintains its corporate headquarters there.  Id. ¶¶ 2, 4.  In addition, Med-Tec points out that the majority of its employees, at least some of whom are familiar with the accused product, are based in the Northern District of Iowa, as is much of the documentary evidence that plaintiff will likely seek in discovery.

UNITED STATES DISTRICT COURT
For the Northern District of California

8

UNITED STATES DISTRICT COURT
For the Northern District of California

Id. ¶ 11; Van Gorp Supp. Decl. ¶ 2.  In contrast, the only potential witnesses that plaintiff identifies as residing in the Northern District of California are the employees of Redwood Medical Center, who plaintiff suggests might be called as percipient witnesses to defendants' allegedly infringing conduct.  However, there is nothing to suggest that Redwood's employees possess special knowledge of defendants' allegedly unlawful conduct that would distinguish them from ProCheck users who reside elsewhere.[2]  Thus, on balance, the convenience of the witnesses, the ease of access to evidence, and the extent of the parties' contacts with the forum heavily favor transferring this action to the Northern District of Iowa.[3]

Even affording the substantial deference owed to plaintiff's choice of forum, it is apparent that transfer of these proceedings to the Northern District of Iowa is appropriate.  There is no nexus between the alleged infringement and this district.  While it is true that defendants may be hailed into this court to defend against plaintiff's patent infringement claim, the fact that defendants can be compelled to defend a suit in a jurisdiction where a single sale of the accused product has occurred does not mean that they should be forced to do so under all circumstances.  Here, a Colorado-based patentee has accused two Iowa corporations with offices located in Iowa and Washington of patent infringement.  The accused product is sold throughout the world and has no special connection to California or to this district.  In light of these facts, plaintiff's decision to file suit here carries with it a strong odor of forum shopping, a practice that the court need not indulge in the case at bar.  The court therefore grants defendants' motion to transfer this action to the Northern District of Iowa.

CONCLUSION

For the reasons stated above, the court DENIES defendants' motion to dismiss for lack of personal jurisdiction and GRANTS defendants' motion to transfer venue to the United States District Court for the Northern District of Iowa.  This court hereby ORDERS that this action be transferred to the Northern District of Iowa for all further proceedings.  The clerk shall transfer the file to the Northern District of Iowa forthwith and close the file in this district.

.

9

IT IS SO ORDERED.

Dated: May 31, 2005

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

10

1

## __ENDNOTES__

2   1.  Consequently, the court need not reach the question of whether it may exercise personal jurisdiction
over defendants under a theory of general jurisdiction.

3

4   2.  Plaintiff also suggests that this district is a more convenient forum because a number of witnesses with
knowledge of the ProCheck software reside in defendants' Lynnwood, Washington office, which is closer

5   to California than in it is to Iowa.  However, this argument merely begs the question as to why plaintiff
chose to file suit in this district rather than in the Western District of Washington, where Lynnwood is

6   located.

7   3.  Because plaintiff is a Colorado corporation with its sole office located in that state, Ritt Decl. ¶ 2,
considerations of the convenience to plaintiff are essentially irrelevant in determining whether Iowa or

8   California is a more convenient forum in which to adjudicate the parties' dispute.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28